TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

JOHN K. VAN DE KAMP
Attorney General

------------------------------
:
OPINION      :
:
of           :   No. 87-105
:
JOHN K. VAN DE KAMP   :   <u>JULY 28, 1987</u>
Attorney General   :
:
JACK R. WINKLER   :
Assistant Attorney General   :
:
----------------------------------------------------------------


THE HONORABLE GRAY DAVIS, STATE CONTROLLER, has requested an opinion on the following questions:

1. Does the first sentence of Government Code section 13967(a) require the imposition of a pecuniary penalty in addition to the one required by Penal Code section 1464?

2. Does Government Code section 13967 require the sentencing court to order the payment of "restitution in the form of a penalty assessment" upon  conviction of any crime and require an additional "restitution fine" when the conviction is for one or more felonies?

3. Did substitution of "restitution" for "restitution fine" in the first sentence of Government Code section 13967(a) in 1984 alter the amount of the penalty to be imposed pursuant to that section and Penal Code section 1464 or modify the method of allocating funds collected under such court orders?

4. Should all moneys collected as "restitution in the form of a penalty assessment in accordance with Penal Code section 1464 and as "restitution fines" be deposited in the Restitution Fund in the State Treasury?

5. If a court fails to order the payment of "restitution in the form of a penalty assessment," or a "restitution fine," or any other fine, forfeiture or penalty, where the law requires such an order, is the county in which the court is located liable for any amounts which otherwise

would have accrued to the state?

## CONCLUSIONS

1. The first sentence of Government Code section 13967(a) does not require the imposition of a pecuniary penalty in addition to the one required by Penal Code section 1464.

2. Government Code section 13967 requires a sentencing court to order "restitution in the form of a penalty assessment" on conviction of only those crimes for which penalty assessments are required by Penal Code section 1464 and requires an additional "restitution fine" when the conviction is for one or more felonies.

3. The substitution of "restitution" for "restitution fine" in the first sentence of Government Code section 13967(a) in 1984 did not alter the amount of the penalty to be imposed pursuant to that section and Penal Code section 1464 or modify the method of allocating funds collected under such court orders.

4. Only part of the money collected as "restitution in the form of a penalty assessment in accordance with Section 1464 of the Penal Code" as provided in Government Code section 13967 is to be deposited in the Restitution Fund. All moneys collected as "restitution fines" pursuant to Government Code section 13967 is to be deposited in the Restitution Fund.

5. If a court fails to order the payment of "restitution in the form of a penalty assessment" or a "restitution fine" or any other fine, forfeiture or penalty where the law requires such an order, the county in which the court is located is not liable for any amounts which otherwise would have accrued to the state.

## ANALYSIS

The questions presented require an interpretation of Government Code section 13967 and Penal Code section 1464. Government Code section 13967(a) provides:

"Upon a person being convicted of any crime in the State of California, the court shall, in addition to any other penalty provided or imposed under the law, order the defendant to pay restitution in the form of a penalty assessment in accordance with Section 1464 of the Penal Code. In addition, if the person is convicted of one or more felony offenses, the court shall impose a separate and additional restitution fine of not less than one hundred dollars ($100) and not more than ten thousand dollars ($10,000). In setting the amount of the fine for felony convictions, the court shall consider any relevant factors including, but not limited to, the seriousness and gravity of the offense and the circumstances of its commission, any economic gain derived by the defendant as a result of the crime, and the extent to which others suffered losses as a result of the crime. Such losses may include pecuniary losses to the victim or his or her dependents as well as intangible loses, such as psychological

2

harm caused by the crime. Except as provided in Section 1202.4 of the Penal Code and subdivision (c) of this section, under no circumstances shall the court fail to impose the separate and additional restitution fine required by this section. This fine shall not be subject to penalty assessments as provided in Section 1464 of the Penal Code."

Penal Code section 1464(a) provides:

"Subject to the provisions of Section 1206.8, there shall be levied an assessment in an amount equal to five dollars ($5) for every ten dollars ($10) or fraction thereof, upon every fine, penalty, or forfeiture imposed and collected by the courts for criminal offenses, including all offenses involving a violation of a section of the Vehicle Code or any local ordinance adopted pursuant to the Vehicle Code, except offenses relating to parking or registration or offenses by pedestrians or bicyclists, or where an order is made to pay a sum to the general fund of the county pursuant to subparagraph (iii) of paragraph (3) of subdivision (a) of Section 258 of the Welfare and Institutions Code. Any bail schedule adopted pursuant to Section 1269b may include the necessary amount to pay the assessments established by this section and Section 1206.8 for all matters where a personal appearance is not mandatory and the bail is posted primarily to guarantee payment of the fine."

In interpreting these statutes we apply the rules of statutory construction established by the courts. The principal rules were summarized in Moyer v. Workmen's Comp. Appeals Bd. (1973) 10 Cal. 3d 222, 230 as follows:

"We begin with the fundamental rule that a court should ascertain the intent of the Legislature so as to effectuate the purpose of the law. In determining such intent the court turns first to the words themselves for the answer. We are required to give effect to statutes according to the usual, ordinary import of the language employed in framing them. If possible, significance should be given to every word, phrase, sentence and part of an act in pursuance of the legislative purpose; a construction making some words surplusage is to be avoided. When used in a statute words must be construed in context, keeping in mind the nature and obvious purpose of the statute where they appear. Moreover, the various parts of a statutory enactment must be harmoninzed by considering the particular clause or section in the context of the statutory framework as a whole." (Citations and quotations omitted.)

The first question presented asks whether the first sentence of Government Code section 13967(a) requires the imposition of a pecuniary penalty in addition to the one required by Penal Code section 1464. The first sentence of Government Code section 13967(a) requires the court to "order the defendant to pay restitution in the form of a penalty assessment in accordance with Section 1464 of the Penal Code" in addition to any other penalty provided or imposed under the law upon a person being convicted of any crime in California. Penal Code section 1464(a) requires the court to levy "an assessment" of $5 for every $10 "upon every fine, penalty, or forfeiture

3

imposed and collected by the courts for criminal offenses" with certain exceptions. Is the restitution required by section 13967(a) part of the assessment required by Penal Code section 1464 or an addition to it?

The restitution required is expressly required to be "in the form of a penalty assessment in accordance with Section 1464 of the Penal Code". The last quoted words indicate a legislative intent that the restitution required by section 13967(a) is to be collected as a penalty assessment in accordance with Penal Code section 1464. All proceeds of the section 1464 penalty assessments are to be deposited in the Assessment Fund and 22.12% thereof is then transferred to the Restitution Fund which is used to pay claims made by victims of crime pursuant to Government Code section 13967(b). Penal Code section 1464(e) and (f)(2). That part of the penalty assessment which goes to the Restitution Fund would appropriately be characterized as "restitution" in the first sentence of section 13967(a). We conclude from the language used in both sections that the exaction required by the first sentence of Government Code section 13967(a) is part of the assessment required to be imposed by Penal Code section 1464 and not an addition to it.

The legislative history of the two sections support our conclusion that the restitution required by Government Code section 13967(a) is part of the penalty assessment collected pursuant to Penal Code section 1464. The penalty assessment feature of Government Code section 13967 was added in l982. Before that the section provided for an additional fine to be levied when a person was convicted of a crime of violence resulting in injury or death to another which was paid into the Indemnity Fund to pay claims made by crime victims. (See chapter 166, Statutes of 1981.) Assembly Bill 1485 authored by Assemblyman Byron Sher, then Chairman of the Assembly Committee on Criminal Law and Public Safety, was enacted as chapter 1092, Statutes of 1982 to implement the restitution requirements of a constitutional amendment.[1] It amended the first sentence of Government Code section 13967 to read as it is quoted above except that chapter 1340, Statutes of 1984 substituted the word "restitution" for the words "a restitution fine". A bill analysis of AB 1485 as amended August 26, 1983 prepared for the Senate Democratic Caucus made these comments in

---

[1]On June 8, l982 in the primary election the voters approved Proposition 8 known as "The Victims' Bill of Rights" which among other things added section 28 to article I of the Constitution, subdivision (b) of which reads:

"(b) Restitution. It is the unequivocal intention of the People of the State of California that all persons who suffer losses as a result of criminal activity shall have the right to restitution from the persons convicted of the crimes for losses they suffer.

Restitution shall be ordered from the convicted persons in every case, regardless of the sentence or disposition imposed, in which a crime victim suffers a loss, unless compelling and extraordinary reasons exist to the contrary. The Legislature shall adopt provisions to implement this section during the calendar year following adoption of this section."

its summary of the bill:

"This bill would require that every person convicted of any crime pay a restitution fine in addition to any other penalty imposed upon him and regardless of his present ability to pay.

"The basic restitution fine would be in the form of a penalty assessment of an additional dollar for every ten dollars, or fraction thereof, upon every fine, penalty, or forfeiture imposed by the courts for any criminal offense except for Vehicle Code offenses relating to parking, registration, pedestrians, or bicyclists.

"In addition, the court would impose a separate restitution fine of not less than $100 and not more than $10,000 for one or more felony offenses. . . .

"The basic restitution fine would be collected in the form of a penalty assessment for the administrative convenience of the county clerks.

"Under existing law 24.58 percent of the penalty assessments collected go into the Indemnity Fund which is used to pay compensation to victims of violent crimes and also to fund victim-witness assistance programs, rape crisis centers, and local district attorney and public defender training programs.

"This bill would divide the present Indemnity Fund into a Restitution Fund which would be used solely to compensate crime victims, a separate victim-witness assistance fund for victim-witness and rape crisis center programs, and a separate fund for DA and PD training.

"This bill would also adjust the percentages of the recipients of penalty assessments, as calculated by the Board of Control, so that every present recipient would receive as much as it does now and so that the additional $1 penalty assessment imposed by this bill would go into the Restitution Fund. . . ."

AB 1485 also amended Penal Code section 1464 to increase the penalty assessment to be added to fines, penalties and forfeitures from $4 to $5 for each $10 or fraction thereof.

The second question first asks whether Government Code section 13967 requires the sentencing court to order the penalty assessment upon the conviction of any crime. Confusion arises because section 13967 provides that "[u]pon a person being convicted of any crime in the State of California, the court shall, . . . order the defendant to pay restitution in the form of a penalty assessment in accordance with Section 1464 of the Penal Code." (emphasis added) However, when Penal Code section 1464 is examined, it provides for imposition of the penalty assessment "upon every fine, penalty or forfeiture imposed and collected by the courts for criminal offenses, including all offenses involving a violation of a section of the Vehicle Code or any local ordinance adopted pursuant to the Vehicle Code, except offenses relating to parking or registration or offenses by

5

pedestrians or bicyclists".

The words "any crime" were inserted in the first sentence of section 13967(a) by the enactment of AB 1485 as     chapter 1092, Statutes of 1983.  As the legislative history of AB 1485, quoted above, indicates the penalty assessment is to be added to "every fine, penalty, or forfeiture imposed by the courts for any criminal offense except for Vehicle Code offenses relating to parking, registration, pedestrians, or bicyclists". Thus the penalty assessment was intended to be added only in the cases of those convicted of crime where the court imposed a "fine, penalty or forfeiture" and not then if the crime was a Vehicle Code offense relating to parking, registration, pedestrian or bicyclists.  The history of the statute, legislative debates and committee reports may be considered in ascertaining the legislative intent when it is not clear from the wording of the statute.  People v. Knowles, (1950) 35 Cal 2d 175, 182.   We conclude that the restitution in the form of a penalty assessment required by Government Code section 13967 is to be imposed in only those criminal cases in which a "fine, penalty or forfeiture" is imposed upon a conviction under Penal Code section 1464 and is not to be imposed when the conviction is for a Vehicle Code offense relating to parking or registration or is committed by a pedestrian or bicyclist.

The second question also notes that Government Code section 13967 requires the sentencing court to order the payment of "restitution in the form of a penalty assessment" upon conviction of any crime and then asks if the section requires an additional "restitution fine" when the conviction is for one or more felonies.  To repeat, the first two sentences of section 13967(a) read:

> "(a) Upon a person being convicted of any crime in the State of California, the court shall, in addition to any other penalty provided or imposed under the law, order the defendant to pay restitution in the form of a penalty assessment in accordance with Section 1464 of the Penal Code.  In addition, if the person is convicted of one or more felony offenses, the court shall impose a separate and additional restitution fine of not less than one hundred dollars ($100) and not more than ten thousand dollars ($10,000)." (emphasis added.)

The words "In addition," underlined above were added by AB 2765 enacted as chapter 1340, Statutes of 1984.  AB 2765, authored by Assemblyman Sher, was described by a consultant for the Assembly Committee on Criminal Law and Public Safety in an analysis of the bill as follows:

> "This bill is designed as a 'clean-up' to the ten bill Victim Restitution Program of 1983.  The bill would make some nonsubstantive, clarifying word changes, would enact sections that were part of the restitution packaage but did not go into effect because of chaptering conflicts, and would make other changes designed to make the restitution provisions more workable."

Adding the words "In addition," served to clarify and emphasize the Legislature's intention that the restitution fine imposed on felony convictions by the second sentence of the section was to be

6

imposed in addition to and not as part of the penalty assessments referred to in the first sentence as was already expressed by the words "separate and additional" in the second sentence of the section.

We think the express words of the statute, underlined above, provide an affirmative response to the second question. The legislative history of AB 1485 quoted above supports our conclusion that when the defendant is convicted of a felony Government Code section 13967 requires both a penalty assessment of $5 for each $10 of fine, penalty or forfeiture imposed and an additional "restitution fine" of $100 to $10,000.

The third question presented asks whether the substitution of "restitution" for "restitution fine" in the first sentence of Government Code section 13967(a) in 1984 altered the amount of the penalty to be imposed under that section and Penal Code section 1464 or modify the method of allocating funds collected under such court orders. We noted above that chapter 1340, Statutes of 1984 made the change referred to. We have also noted that Chapter 1340 was the result of the enactment of AB 2765 designed as clean-up legislation for the 1983 Victim Restitution Program. The substitution of "restitution" for "a restitution fine" was the result of an amendment to AB 2765 in the Senate on June 19, 1984. The Legislative Counsel's Digest was changed as follows as a result of this and another change:

"(1) Existing law provides for the imposition of restitution fines upon persons convicted of various crimes, including certain cases under the juvenile court law.

This bill would specify that these fines are not subject to penalty assessments under other, specified provisions of law. It also would make a related clarifying change with respect to the denomination of a certain penalty assessment." (Emphasis in original to indicate words changed or added.)

Thus the purpose of the word substitution in question was to make a "clarifying change with respect to the denomination of a certain penalty assessment" related to the imposition of restitution fines. The "certain penalty assessment" referred to was the penalty assessment mentioned in the first sentence of Government Code section 13967(a). The substitution clarified the words "pay a restitution fine in the form of a penalty assessment" which had denominated the same exaction as both a fine and a penalty assessment by making it clear that it was a penalty assessment and not a fine and that it was to be used for the purpose of making restitution to crime victims.

We conclude that the substitution of "restitution" for "a restitution fine" in the first sentence of Government Code section 13967(a) in 1984 did not alter the amount of the penalty to be imposed pursuant to that section and Penal Code section 1464 or modify the method of allocating funds collected under such court orders.

The fourth question asks whether all moneys collected in payment of orders for "restitution in the form of a penalty assessment in accordance with Section 1464 of the Penal Code" and as "restitution fines" as provided in Government Code section 13967(a) must be deposited in

7

the Restitution Fund in the State Treasury. The first quoted language is somewhat confusing because it suggests that the section 1464 penalty assessment provides only for restitution. Of course, an examination of Penal Code section 1464 reveals that while it provides for but one penalty assessment of $5 for each $10 of fine (but see footnote 2) the proceeds of that penalty assessment are used to fund a number of programs, only one of which is to provide restitution for crime victims.

Penal Code section 1464(e) provides:

"(e) After a determination by the court of the amount due [on the penalty assessment], the clerk of the court shall collect the same and transmit it to the county treasury. The portion thereof attributable to Section 1206.8 [2] shall be deposited in the appropriate county fund and the balance shall then be transmitted to the State Treasury to be deposited in the Assessment Fund, which is hereby created. The transmission to the State Treasury shall be carried out in the same manner as fines collected for the state by a county."

Penal Code section 1464(f) provides in part:

"(f) The moneys so deposited shall be distributed as follows: . . .

"(2) Once a month there shall be transferred into the Restitution Fund an amount equal to 22.12 percent of the funds deposited in the Assessment Fund during the preceding month. . . ."

We interpret the words "restitution in the form of a penalty assessment in accordance with Section 1464 of the Penal Code" in the first sentence of Government Code section 13967(a) to mean that portion of the penalty assessment collected pursuant to Penal Code section 1464 which is to be deposited in the Restitution Fund pursuant to Penal Code section 1464(e)(2). As so interpreted all of such restitution must be deposited in the Restitution Fund. Of course other portions of the penalty assessment are to be deposited elsewhere as provided in Penal Code section 1464(e)and (f).

The first sentence of Government Code section 13967(b) provides:

---

[2]Penal Code section 1206.8 provided for additional penalty assessments in certain counties to fund the construction of justice facilities. Section 1206.8 was repealed in 1984 (See chapter 726, §7 and chapter 1339 §7, Statutes of 1984) and has been replaced by Government Code section 76000 et seq.

8

"(b) Except as provided in subdivision (c),[3] the fine imposed pursuant to this section shall be deposited in the Restitution Fund in the State Treasury. . . ."

The only "fine" referred to in Government Code section 13967 is the "restitution fine" imposed for felony convictions pursuant to the second sentence of subdivision (a).

We conclude that "restitution in the form of a penalty assessment in accordance with Section 1464 of the Penal Code" in Government Code section 13967(a) means only that portion of the penalty assessment which is to be distributed to the Restitution Fund under Penal Code section 1464. All of such restitution and the "restitution fines" collected in payment of orders made pursuant to Government Code section 13967(a) must be deposited in the Restitution Fund.

The last question presented asks whether the county in which the judicial district is located is liable to the state for the amounts of restitution and restitution fine a court is required to collect pursuant to Government Code section 13967(a) when the court fails to collect such funds. The liability contemplated by this question is for money or damages due to the state for a trial judge's failure to collect the restitution and restitution fine required by Government Code section 13967(a). Thus we do not consider other remedies which may be available to the state to enforce compliance with the requirements of Government Code section 13967(a) such as a petition for writ of mandate pursuant to Code of Civil Procedure section 1084 et seq. We are aware of no statute or other law which creates a cause of action in the state for money or damages against a county for the failure of a trial judge to collect money for the state in a manner required by a state statute. Any such cause of action would appear to be subject to the provisions of Division 3.6 of Title 1 of the Government Code (commencing with section 810) entitled "Claims and Actions Against Public Entities and Public Employees" sometimes referred to as "the Tort Claims Act". Government Code section 814 excludes from said act any "liability based on contract or the right to obtain relief other than money or damages against a public entity or public emmployee".

Government Code section 815 provides in part:

"Except as otherwise provided by statute:

"(a) A public entity is not liable for an injury, whether such injury arises out of an act or omission of the public entity or a public employee or any other person. . . ."

The legislative history of Government Code section 815 indicates that the Legislature intended that public entities were not to be liable except by contract for money or damages in the absence of a

_____

[3]Government Code section 13967 was amended by chapter 1438, Statutes of 1986 by adding subdivision (c) and references thereto in subdivisions (a) and (b) to provide an alternative to the restitution fine required therein, namely an order that restitution be paid directly to the victim of the crime.

statute or constitutional provision imposing such liability.[4]

Terms used in Government Code section 815 are defined in the following sections of the Government Code:

§ 811.2 "'Public entity' includes the State, the Regents of the University of California, a county, city, district, public authority, public agency, and any other political subdivision or public corporation in the State."

§ 811.4 "'Public employee' means an employee of a public entity."

§ 810.2 "'Employee' includes an officer, judicial officer as defined in Section 28 of the Elections Code, employee, or servant, whether or not compensated, but does not include an independent contractor."

§ 810.8 "'Injury' means death, injury to a person, damage to or loss of property, or any other injury that a person may suffer to his person, reputation, character, feelings or estate, of such nature that it would be actionable if inflicted by a private person."

§811.8 "'Statute' means an act adopted by the Legislature of this State or by the Congress of the United States, or a statewide initiative act."

---

[4]The Legislative Committee Comment set forth in the annotation to Government Code Section 815, West's Annotated California Codes, states in part:

"This section abolishes all common law or judicially declared forms of liability for public entities, except for such liability as may be required by the state or federal constitution, e. g., inverse condemnation. In the absence of a constitutional requirement, public entities may be held liable only if a statute (not including a charter provision, ordinance or regulation) is found declaring them to be liable. Because of the limitations contained in Section 814, which declares that this part does not affect liability arising out of contract or the right to obtain specific relief against public entities and employees, the practical effect of this section is to eliminate any common law governmental liability for damages arising out of torts. The use of the word "tort" has been avoided, however, to prevent the imposition of liability by the courts by reclassifying the act causing the injury. . . .

"In the following portions of this division, there are many sections providing for the liability of government entities under specified conditions. In other codes there are a few provisions providing for the liability of governmental entities, e. g., Vehicle Code Section 17001 et seq. and Penal Code Section 4900. But there is no liability in the absence of a statute declaring such liability. . . ."

10

Elections Code section 28 provides:

"'Judicial officer' means any Justice of the Supreme Court, justice of a court of appeal, judge of the superior court, judge of a municipal court, or judge of a justice court."

Applying these definitions to the facts related in the last question Government Code section 815 provides that a county, is not liable for a loss of property which arises out of an omission of a judge of a trial court in California except as provided by statute. We assume, for purposes of this opinion only, that a loss of money for the Restitution Fund which would occur if judge of a trial court failed to collect the restitution and restitution fine required by Government Code section 13967(a) would be a "loss of property of such nature that it would be actionable if inflicted by a private person" (even though a private person has no authority to order restitution or impose a fine). Thus we assume there is an "injury" to the state within the meaning of Government Code sections 810.8 and 8l5 to ascertain whether there is any basis for county liability under the Tort Claims Act.

Our research has disclosed no statute which would make a county liable for the loss to the state if a judge failed to impose or collect any restitution or restitution fine required by Government Code section 13967(a). Government Code section 68101 requires a judge who receives fines or money to which the state is entitled to deposit it with the county treasurer and Government Code section 68103 provides that the official bond of the judge is liable for the failure to transmit such fines . Of course neither of these sections apply when no fine is imposed or received by the judge.

Government Code section 815.2 provides:

"(a) A public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would, apart from this section, have given rise to a cause of action against that employee or his personal representative.

"(b) Except as otherwise provided by statute, a public entity is not liable for an injury resulting from an act or omission of an employee of the public entity where the employee is immune from liability."

Thus under said subdivision (b) a county would not be liable for a state trial judge's omission to collect the restitution and restitution fine required by Government Code section 13967(a) if the judge is immune from liability for such omission. In that regard Government Code section 821 provides:

"A public employee is not liable for an injury caused by his adoption of or failure to adopt an enactment or by his failure to enforce an enactment." (Cf. Government Code section 820.4.)

Furthermore, Government Code section 818.2 provides directly:

11

"A public entity is not liable for an injury caused by adopting or failing to adopt an enactment or by failing to enforce any law."

Trial court judges are considered state officers for some purposes and county officers for other purposes. (See 68 Ops.Cal.Atty.Gen. 127, 131 (1985)) We see no need to determine whether a trial judge is a state or county officer for purposes of the last question because in either case the judge is a public employee for whose omissions no public entity is liable under Government Code Section 815. That section bars liability if the state were to sue the county on the theory that the judge was a county officer and failed to collect money due the state just as it bars liability if the county were to sue the state on the theory that the judge was a state officer and failed to collect that part of the penalty assessment which is due the county under Government Code section 76000 et seq. Under Government Code section 815 a public entity is not liable for the acts or ommissions of its employees in the absence of some statute imposing such liability.

We conclude that a county is not liable to the state for the restitution or restitution fine required to be collected by Government Code section 13967(a) when the court fails to impose the same.